**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:08-CR-11-TLS |
| | ) | (1:12-CV-50) |
| HARVEY R. FIELDS, JR. | ) | |

**OPINION AND ORDER**

The Defendant, Harvey Fields, Jr., pleaded guilty to possessing with intent to distribute crack cocaine, 21 U.S.C. § 841(a)(1), and was sentenced to 197 months' imprisonment as a career offender. This matter is before the Court on the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 66]. The Defendant has identified the following grounds for his claim to relief: (1) ineffective assistance of trial counsel at the suppression hearing; (2) ineffective assistance of appellate counsel on direct appeal; (3) ineffective assistance of trial counsel with regard to the Defendant's understanding of the appellate waiver contained in his Plea Agreement; and (4) ineffective assistance of trial counsel at sentencing. For the reasons set forth in this Opinion and Order, the Defendant's Motion will be denied, and no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(2).

**PROCEDURAL BACKGROUND**

On February 27, 2008, the Government charged in an Indictment that, on January 19 and 22, 2008, the Defendant possessed with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts 1 and 3) and possessed a firearm having already been convicted of a felony in violation of 18 U.S.C. § 922(g)(1) (Count 2). On May 2, the Defendant filed a Motion

to Suppress Evidence, alleging that when police detained him they did not have reasonable

suspicion, grounded in specific and articulable facts, that he may be involved in criminal

activity. After an evidentiary hearing and briefing, the Court concluded that the officers' actions

did not violate the Defendant's Fourth Amendment rights, and there was no basis to suppress the

firearm and crack cocaine, or the Defendant's statements. (12-18-08 Order, ECF No. 25.)

On January 7, 2009, the parties filed a written Plea Agreement wherein the Defendant

agreed to enter a conditional plea of guilty to Count 1 of the Indictment, reserving in paragraph 6

of the Agreement the right to challenge on appeal the Court's Order denying his Motion to

Suppress, in return for the dismissal of Counts 2 and 3 of the Indictment. The Plea Agreement

contained the following waiver:

> I understand that the law gives a convicted person the right to appeal the conviction
> and the sentence imposed, I also understand that no one can predict the precise
> sentence that will be imposed, and that the Court has jurisdiction and authority to
> impose any sentence within the statutory maximum set for my offense as set forth in
> this Plea Agreement; with this understanding and in consideration of the
> government's entry into this Plea Agreement, I expressly waive my right to appeal
> or to contest my conviction and my sentence (except as stated in paragraph 6) and
> any restitution order imposed or the manner in which my conviction or my sentence
> or the restitution order was determined or imposed, to any Court on any ground,
> including any claim of ineffective assistance of counsel unless the claimed
> ineffective assistance of counsel relates directly to this waiver or its negotiation,
> including any appeal under 18 U.S.C. § 3742 or any post-conviction proceeding,
> including but not limited to, a proceeding under 28 U.S.C. § 2255.

(Plea Agreement ¶ 8.g, ECF No. 28). In paragraph 12, the Defendant declared that he was

offering his "plea of guilty freely and voluntarily and of [his] own accord," that "no promises

ha[d] been made to [him] other than those contained in this [plea] agreement," and he was not

"threatened in any way by anyone to cause [him] to plead guilty in accordance with this

agreement."

On April 9, the Court conducted a change of plea hearing. The Defendant took an oath and the Court made detailed inquiry into his competence to plead, the voluntariness of his plea, and his understanding regarding specific terms of the Plea Agreement. The Court found that the Defendant was fully competent and capable of entering an informed plea, that the Defendant was aware of the charges and the consequences of the plea, and that the plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Among the provisions of the Plea Agreement that were the subject of the Court's inquiry was the appellate waiver, specifically the fact that the Defendant was agreeing to waive his ability to appeal his conviction and sentence, but had preserved his right to challenge the Court's suppression ruling, and he was also giving up his ability to collaterally attack his conviction and sentence or the manner in which it was imposed through habeas corpus. The Court asked the Defendant whether he understood that he was giving up his right to claim ineffective assistance of counsel unless that ineffectiveness related directly to the negotiation of his appellate waiver. The Defendant affirmed this understanding. He reiterated as well that no one had forced him to plead, threatened him, or made any promises that were not part of the Plea Agreement to get him to plead guilty, and that he was pleading guilty of his own free will.

The Court accepted the Defendant's plea of guilty, accepted the Plea Agreement, and sentenced the Defendant to 197 months' imprisonment. Thereafter, the Defendant appealed the Court's denial of his Motion to Suppress. The Seventh Circuit affirmed the judgment of the district court. *See United States v. Fields*, 373 F. App'x 624 (7th Cir. 2010).

On February 21, 2012, the Defendant filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. On March 26, the Government

3

filed its Response in Opposition to Section 2255 Petition. The Government asserts that the Defendant is not entitled to relief because the claims he raises are barred by the explicit waiver contained in the terms of his written Plea Agreement and, alternatively, have no merit. On February 5, 2013, the Defendant, through counsel, filed his Response to Government's Response in Opposition to Section 2255 Petition [ECF No. 90], arguing that his counsel should have alerted the Court to the Defendant's mental health history and traumatic brain injury during the change of plea colloquy. The Defendant argues that, had counsel done so, the Court could have conducted a more specific inquiry into the Defendant's present mental state and his capacity to understand the terms of his Plea Agreement, including the appellate waiver provision. The Defendant also appears to argue that his counsel was ineffective for failing to raise diminished mental capacity as a potential factor for reducing the Defendant's sentence, although he does not expound on this claim.

## ANALYSIS

A plea agreement is a type of contract subject to contract law principles tempered by limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Courts "enforce a plea agreement's appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008) (quotation marks and citation omitted). "A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as a part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (citing *Jones v. United States*, 167 F.3d 1142,

4

1144 (7th Cir. 1999)). Here, the Defendant's waivers of both his right to appeal (except as to his challenge of this Court's ruling on his Motion to Suppress Evidence) and his right to collaterally attack his conviction and sentence, "including but not limited to, a proceeding under 28 U.S.C. § 2255" (Plea Agreement ¶ 8.g), are express and unambiguous, and the Defendant does not argue otherwise. The Seventh Circuit has "generally upheld and enforced these waivers, with limited exceptions for cases in which the plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller*, 657 F.3d at 681 (quoting *Jones*, 167 F.3d at 1144–45).

The Defendant does not allege that the Court relied on impermissible facts, such as his race, in selecting his sentence, or that he was sentenced in excess of the statutory maximum for his offense of conviction. Accordingly, habeas relief is only available to the Defendant if he first nullifies his plea agreement. *See United States v. Hare*, 269 F.3d 859, 860 (7th Cir. 2001) ("A waiver of appeal is valid, and must be enforced, unless the agreement in which it is contained is annulled (for example, because involuntary).") (citing *United States v. Jeffries*, 265 F.3d 556 (7th Cir. 2001), and *United States v. Wenger*, 58 F.3d 280 (7th Cir. 1995)). The Defendant does not appear to be arguing that he did not enter the Plea Agreement according to his own free will. He does not suggest that his plea or his Plea Agreement were obtained through coercion, threats, or promises outside the Plea Agreement itself, and the waiver provision is the only term in the Plea Agreement that the Defendant discusses in his Motion for habeas relief. Asserting that he unknowingly and unintelligently agreed to the waiver, he argues:

5

Mr. Fields did not understand the meaning or consequences of the appeal and collateral challenge waiver, and many not have really understood the existence of those waivers. He understood that he would be able to appeal. He did not understand what he would be able to appeal or argue after an appeal was limited. This was a direct result of a failure of his trial counsel to ensure that Mr. Fields understood the existence, meaning and consequences of the waiver. *Mr. Fields is not challenging his guilt or the plea agreement in making this argument.* He is only challenging the waivers on constitutional grounds and asks the district court to sever the invalid waivers from his plea agreement.

(Mot. 8, ECF No. 66 (emphasis added).) Based on this language, the Defendant is not claiming that he involuntarily entered the Plea Agreement, only that he did not fully understand the consequences of the waiver provision. But only arguments that would nullify the plea itself survive voluntary waivers of appeal and collateral attack. *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000). "It is inappropriate to take a blue pencil to the agreement, removing the provisions that in retrospect the defendant wishes were not there." *United States v. Wenger*, 58 F.3d 280, 283 (7th Cir. 1995); *see also id.* at 282 ("Waivers of appeal must stand or fall with the agreements of which they are a part. If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored.").

In his final response brief, the Defendant broadens the argument asserted in his Motion, claiming that "evidence exists to conclude that Fields probably did not understand the *plea agreement* he was given and to which he agreed." (Def.'s Resp. 8 (emphasis added).) However, the Defendant's Affidavit, submitted in connection with the response brief, does not support the argument that the Defendant did not understand the terms of the Plea Agreement. The Defendant provides only a generalized statement that he "did not understand certain things." (Def. Aff. ¶ 8, ECF No. 90-1.) The Defendant states that he shared his medical condition with his attorney and the fact that he did not understand certain things, and that "despite not understanding various

6

documents, concepts, discussions and proceedings, I went along with what I believed I was supposed to do to get the case concluded." (*Id.*) The Defendant does not identify what, in particular, he did not understand or what he "went along with." He states that he was confused about "language in various portions of the agreement," but, again, he does not identify the confusing language. The Defendant makes the inexact assertion that he "shared concerns with Mr. Campbell about the plea agreement." (*Id.* ¶ 9.) Although he states, "I understood [the Plea Agreement] to read that I could appeal my conviction if necessary," he does not identify any other specific provision in his Affidavit, stating generally that he "was confused regarding the language in various portions of the agreement during the hearing on entry of plea but did not express my concerns out of embarrassment and belief that I had to move forward at that juncture." (*Id.*)

The Court could interpret some of the Defendant's statements as assertions that he did not voluntarily enter the plea agreement, particularly that he went along with what he believed he was supposed to do to get the case concluded. However, the Defendant ultimately never claims in clear and unambiguous terms that his plea or the Plea Agreement was involuntary, or that he was made promises outside the text of the Plea Agreement. In Paragraph 12 of his Plea Agreement, the Defendant declared that he "offer[ed] [his] plea of guilty freely and voluntarily and of [his] own accord," and that "no promises ha[d] been made to [him] other than those contained in this agreement, nor ha[d] [he] been threatened in any way by anyone to cause [him] to plead guilty in accordance with this agreement." (Plea Agreement ¶ 12, ECF No. 28.) In addition, he repeated these assurances during the change of plea colloquy, and presents no reason to discount the statements that no one made any promises or assurances to him that were not in

the written plea agreement to get him to accept the plea agreement, or his assurance that he had

not been threatened or coerced in any way to accept and sign the plea agreement. (Plea Hr'g Tr.

11.) The straightforward questions and answers about promises, threats, or coercion did not

require any understanding of unique or difficult legal concepts.

 Moreover, these representations, as well as others made by the Defendant "under oath at

a plea colloquy, are entitled to a presumption of correctness." *United States v. Chapa*, 602 F.3d

865, 869 (7th Cir. 2010) (citing *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008)). "[A]

careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary,"

*United States v. Schuh,* 289 F.3d 968, 975 (7th Cir. 2002), and courts may consider a defendant's

signature on the plea agreement and his statements during the plea colloquy as evidence of a

knowing and voluntary waiver, *United States v. Jemison,* 237 F.3d 911, 917 (7th Cir. 2001).

During his plea colloquy, the Defendant indicated that he was fully satisfied with the

representation and the advice of his counsel, that he had an opportunity to read and discuss the

Plea Agreement with his attorney before signing it, and that he understood the terms of the Plea

Agreement. He also made specific assurances about the waiver—the only provision that he

unequivocally challenges in his Motion. The Court explained the conditional nature of his plea,

in which he reserved the right to have the Court of Appeals review the Court's decision denying

his Motion to Suppress. The Defendant indicated that he understood that his plea was

conditional, and also understood that he was waiving the right to appeal any other issues or

matters. When the Court asked, "Do you understand that . . . you are also agreeing that you will

not be able to collaterally attack your conviction or sentence, or the manner in which your

conviction or sentence were imposed through corpus petition?" (Plea Hr'g Tr. 15.) The

8

Defendant answered, "Yeah." (*Id.* at 16.) The Defendant also indicated that he understood that

he was giving up any right that he may have to claim ineffective assistance of counsel unless that

ineffectiveness related directly to the appellate waiver or its negotiation. (*Id.*) Later in the

hearing, the following exchange took place:

> THE COURT: Do you understand that in this agreement with the government, you
> are waiving or giving up your right to appeal or collaterally attack all or part of the
> sentence, except as stated in the paragraph with regard to your right to challenge the
> outcome of your suppression motion?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Do you understand that agreements such as this are
> generally valid, and that you would most likely be prohibited from appealing the
> sentence that I give you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that according to this plea agreement that you
> have, you would also be most likely prohibited from challenging your sentence
> through habeas corpus?
>
> THE DEFENDANT: Yes.

(*Id.* at 21–22.) The Court properly informed the Defendant that he was waiving his right to

appeal or to collaterally attack his sentence of conviction. *See* Fed. R. Crim. P. 11(b)(N)

(providing that the court must inform the defendant during the plea colloquy of any provision

waiving the right to appeal or collaterally attack the sentence); *United States v. Quintero*, 618

F.3d 746, 751 (7th Cir. 2010) (noting that the court looks to the plea colloquy to determine if the

district judge properly informed the defendant that the waiver may preclude his right to appeal).

The Court had an opportunity to observe the Defendant's demeanor during the entirety of the

proceeding when the Defendant told the Court that he understood this waiver. The Seventh

Circuit has held that the only way a judge may determine whether a plea is knowingly and

voluntarily made is by "observ[ing] the defendant's demeanor and responses to the court's questions and . . . rely [ing] on the defendant's sworn answers." *United States v. Walker*, 447 F.3d 999, 1004–05 (7th Cir. 2006).

The Defendant now asserts that he went along with things out of embarrassment, even though he was confused about certain terms, but he does not specifically identify what he went along with, or what terms caused him confusion. Assuming that the Defendant means to establish that he was confused about the waiver despite his assurances otherwise, the Defendant's Motion is not convincing. "Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005). The Defendant's ill-defined assertions do not provide a compelling explanation. The weakness of the explanation is exposed, not only through its lack of detail, but also by the Defendant's own statements during the change of plea hearing. When the Court asked the Defendant if there was anything in the plea agreement that he did not understand, he said there was something. (Plea Hr'g Tr. 8.) The Defendant proceeded to ask the Court about the enhancement for possession of a firearm despite the agreement to dismiss the gun charges. In addition, when the Court asked the Defendant if he understood that the Court could reject the recommendation that his sentence be reduced for acceptance of responsibility and impose a sentence that was more severe than he might expect, he admitted that he did not understand and asked the Court to repeat the question. (Plea Hr'g Tr. 12.) The Defendant thus demonstrated, contrary to his assertion in his Affidavit that he did not speak out due to embarrassment, that he was willing to express concerns about his

10

Plea Agreement. Additionally, although the Defendant argues that he may not have understood the consequences of the waiver given his diminished cognitive abilities and his counsel's failure to explain the waiver and failure to alert the Court to the Defendant's diminished cognitive abilities, he does not assert that he was, in fact, incompetent to understand the nature and consequences of the proceedings and to give his guilty plea.

The Defendant's statements during the plea colloquy concerning his understanding of the substantive terms of the Plea Agreement, including the appellate waiver and collateral attack waiver, as well as his statements that no one had forced him to plead, threatened him, or made any promises that were not part of the Plea Agreement to get him to plead guilty, and that he was pleading guilty of his own free will, all support the conclusion that he entered a knowing and voluntary waiver of his right to collaterally attack the sentence. *United States v. Weathington*, 507 F.3d 1068, 1073 (7th Cir. 2007) (stating that a "defendant who simply asserts that his plea was not voluntary, in contradiction of his testimony at the plea hearing, . . . faces 'a heavy burden of persuasion'") (quoting *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987)). The Defendant's vague assertions in his Affidavit do not satisfy the heavy burden of persuasion.

The only possible remaining claim that the Defendant may advance that is not barred by his clear and unambiguous waiver, is a claim that his counsel was ineffective during the negotiation of his Plea Agreement. The Court will assume, for purposes of this Motion, that the Defendant intended to raise such a claim when he argues that his counsel was ineffective for failing to raise concerns to the Court during the change of plea hearing about the Defendant's mental state or history of traumatic brain injury. Claims of ineffective assistance of counsel are governed by the two–pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To

11

prevail on an ineffective assistance of counsel claim, the Defendant must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The defendant must establish specific acts or admissions to fall below professional norms. *Strickland*, 466 U.S. at 690.

The second *Strickland* prong requires the Defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Benefiel v. Davis*, 357 F.3d 655, 661 (7th Cir. 2004). "To demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (citing *United States v. Martinez*, 169 F.3d 1049, 1052–53 (7th Cir. 1999)). If the Court finds either the performance or the prejudice component of the ineffective assistance claim deficient under the *Strickland* test, then there is no need to consider the sufficiency of the other component. *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990).

The Defendant's claim of ineffective fails because he has not offered any evidence to suggest that, had he more fully understood the waiver, he would have decided not to enter the guilty plea or, alternatively, that he could have negotiated different terms. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (noting that with respect to plea bargains, *Strickland* prejudice

12

prong requires the defendant to show that counsel's constitutionally ineffective performance affected the outcome of the plea process). The Defendant has not asserted that he placed any particular importance or emphasis on the ability to pursue an appeal or post-conviction relief beyond that already afforded by his conditional plea when he was deciding whether or not to plead guilty. He has not even alleged that, had counsel prompted the Court to conduct a more pointed inquiry regarding his understanding of the terms of the agreement, he would have shown himself to be confused or would have elected to proceed to trial. In short, the Defendant fails to explain how a clearer understanding of the waiver would have impacted the results of the proceedings. *See, e.g., Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (holding that a habeas petition did not establish the kind of prejudice necessary to satisfy the second half of the *Strickand* test where he did not allege that, had counsel informed his correctly about his parole eligibility date, he would not have pleaded guilty and would have insisted on going to trial). As no prejudice resulted from counsel's failure to inform the Court of the Defendant's medical or mental health history, the Defendant has not established a violation of his rights under the Sixth Amendment.[1]

The Defendant also claims that counsel rendered ineffective assistance with respect to his suppression motion, his sentence, and his appeal, but these claims have nothing to do with the negotiation of the waiver. *See, e.g., Bridgeman*, 229 F.3d at 593 (stating ineffective assistance of counsel claims that relate to anything other than plea negotiation, for example, those related to counsel's performance at sentencing, are barred by an enforceable waiver); *Mason v. United*

---

[1] The Defendant asserts in passing that, had counsel brought the Defendant's mental history to the attention of the Court, the Court "could have considered a reduction at sentencing based upon diminished mental capacity." (Def.'s Resp. 9.) The Defendant does not expound on this argument. In any event, the Presentence Investigation Report fully advised the Court as to the Defendant's physical condition and mental and emotional health. (PSR ¶¶ 74–92.)

*States,* 211 F.3d 1065, 1069 (7th Cir. 2000) (finding that because the defendant's ineffective assistance of counsel claim related only to counsel's performance with respect to sentencing, it had nothing to do with the issue of a deficient negotiation of the waiver and was barred by a waiver).

## EVIDENTIARY HEARING

The Defendant has requested a hearing to be held in this matter. An evidentiary hearing need not be held for every § 2255 motion. "No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (citation omitted). Here, the Court has concluded that the Defendant's arguments are either waived or are unsuccessful on their merits. Because the Court finds that the Defendant has not raised a cognizable claim in his § 2255 Motion, he is not entitled to a hearing. *See, e.g.*, *Hutchins v. United States*, 618 F.3d 693, 700 (7th Cir. 2010) (finding that despite trial counsel's election not to refute the defendant's allegations that he provided ineffective assistance, an evidentiary hearing was not necessary because the record before the district court conclusively showed that the defendant was not prejudiced under *Strickland*).

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial

14

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules

Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been

resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation

marks omitted). Where the district court has rejected the constitutional claim on the merits, "the

showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong." *Slack*, 529 U.S. at 484. A defendant is not required to show that he will

ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that

the question is the "debatability of the underlying constitutional claim, not the resolution of that

debate"). "Where a plain procedural bar is present and the district court is correct to invoke it to

dispose of the case, a reasonable jurist could not conclude either that the district court erred in

dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529

U.S. at 484.

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a

certificate of appealability should issue. Additional argument is not necessary here because no

reasonable jurist could conclude that the Defendant did not knowingly and voluntarily plead

guilty pursuant to a Plea Agreement that contained an express waiver of the right to collaterally

attack his conviction or sentence. Nor could any reasonable jurist find the Court's assessment of

the ineffective assistance of counsel claim related to the appellate waiver debatable or wrong.

15

**CONCLUSION**

For the reasons stated above, the Court DENIES the Defendant's Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF

No. 66]. The Court also declines to issue a Certificate of Appealability.

SO ORDERED on April 8, 2013.

        s/ Theresa L. Springmann
       THERESA L. SPRINGMANN
       UNITED STATES DISTRICT COURT

16